**FIJI WATER COMPANY, LLC, Paramount International Export Ltd., Natural Waters of Viti Limited, Plaintiffs,**

v.

**FIJI MINERAL WATER USA, LLC, et al., Defendants.**

**Case No. SACV09–1148 CJC MLGx.**

United States District Court, C.D. California, Southern Division.

Sept. 30, 2010.

Danielle M. Criona, Christopher Van Gundy, Joie Marie Gallo, Michael M. Vasseghi, Roll Law Group PC, Los Angeles, CA, for Plaintiffs.

Ismail Amin, The Amin Law Group Ltd., Irvine, CA Hari Shivshanka Lal, Hari S. Lal & Associates, Anaheim, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

CORMAC J. CARNEY, District Judge.

This trade dress dispute involves the packaging and design elements of bot-

tled "artesian water" from the Republic of Fiji. Plaintiffs Fiji Water Company LLC, Paramount International Export Ltd., and Natural Waters of Viti Limited (collectively "FIJI") produce and market bottled still "natural artesian water" from the Republic of Fiji, which they have distributed in the United States since 1997 under the registered trademark "FIJI." Defendants Fiji Mineral Water USA, LLC, FMW USA Licensing, LLC, Mineral Waters of Fiji, Pure Mineral Waters of Fiji, LLC, Fiji Imports, LLC, Straub Distributing Company, LLC, Straub Distributing Company, Ltd., Coast Beverage Group, LLC, Global H20 Distributors, Inc. (collectively "VITI") also produce bottled "natural artesian mineral water" from the mountains of Fiji, and began distributing their water in the United States under the label "VITI" in April 2009. On October 6, 2009, FIJI filed suit against VITI for federal law claims of trademark infringement, trade dress infringement, trademark dilution, and California statutory and common law claims for unfair competition. FIJI now brings this motion for a preliminary injunction against VITI, alleging that the marketing and sale of VITI water in the United States irreparably harms FIJI by infringing on FIJI's trade dress. FIJI has met its burden of showing that a preliminary injunction in its favor is warranted. FIJI has invested substantial time, money, and effort developing its inherently distinctive trade dress for its bottled water and the consuming public has come to associate that trade dress with FIJI. VITI's substantially similar trade dress for its bottled water is likely to confuse consumers into believing that they are purchasing bottled water that is made by or affiliated with FIJI. A preliminary injunction is the appropriate remedy to prevent that confusion.[1]

---

1. FIJI has also sought a preliminary injunction based on the alleged infringement of eleven federally registered marks (Am. Compl. ¶ 26, Nov. 6, 2009). To succeed in a trademark infringement claim, FIJI must similarly show (1) a valid trademark, and (2) a likelihood of confusion. *See Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir.2000). The Court finds that FIJI is likely to succeed in showing valid, protectable trademarks on ten of these marks, because federal registration of a mark is prima facie evidence of ownership and validity, 15 U.S.C. §§ 1057(b), 1115(a), *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir.2007), and VITI has not challenged the validity of the marks related to the stylized word FIJI for use on drinking water and natural artesian water, (Reg. No. 3,282,520), the tropical motif on the packaging (Reg. Nos. 2,703,802 and 2,714,973) and the front label with the stylized hibiscus flower (Reg. Nos. 3,285,644 and 3,282,513), the palm fronds, (Reg. Nos. 3,385,371 and 3,381,795), and the "complete scene" of tropical foliage (Reg. Nos. 3,285,644 and 2,286,974). Fiji asserted that the word mark FIJI (Reg. No. 2,703,620) is incontestable under 15 U.S.C. § 1065 because it has been in continuous use for more than five years. (Second Am. Mem. P. & A. 11:6–8, June 3, 2010.) VITI's alleged intention to file a lawsuit challenging the mark as a geographic description is not enough to rebut the presumption of validity, because the grounds on which an incontestable mark can be challenged are prescribed by the statute and do not include descriptiveness. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 201, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). In the Ninth Circuit, even a descriptive mark that has become incontestable is conclusively presumed to have acquired secondary meaning. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n. 3 (9th Cir. 2002) (*citing Park 'N Fly, Inc.*, 469 U.S. at 201, 105 S.Ct. 658). Therefore, the Court finds that FIJI is likely to establish valid, protectable marks. However, the Court is not persuaded that there is a likelihood of confusion with respect to any one of FIJI's marks individually

## I. BACKGROUND

FIJI produces and markets premium natural artesian water that it bottles at the source in Fiji and sells worldwide. FIJI started selling its product in the United States in 1997. (Cochran Decl. ¶ 32.) Since then, it has sold more than 1.1 billion bottles of water, more than 90% of which were sold in the United States. (Cochran Decl. ¶ 46.) FIJI has also spent more than $72 million advertising, marketing and promoting its bottled water worldwide during that time, including $17.6 million in 2008 in the United States alone. (Cochran Decl. ¶¶ 44–45.) FIJI has won numerous awards for both the quality of its water, (Cochran Decl. ¶¶ 14–15), and the design of its packaging, (Cochran Decl. ¶ 29). FIJI water has been the subject of articles in major U.S. publications and has been placed on many popular TV shows and in major motion pictures. (Cochran ¶¶ 16, 40–42.) FIJI has also sponsored many charity events. (Cochran Decl. ¶¶ 36–37.)

VITI also produces still artesian mineral water that is bottled at the source in the Drasa Mountains in Fiji to assure high quality. (Def.'s Mem. P. & A. Supp. Opp'n to Mot. for Prelim. Inj., Ex. C.) VITI has produced and marketed bottled water at least since 2007, when it produced a product called "Vitiblu." (Criona Decl. ¶ 13, Feb. 8, 2010.) VITI did not enter the United States market until around April 2009, when it began distributing its allegedly infringing "VITI" bottled water through the ARCO AM/PM convenience stores in Washington, Oregon, California, Nevada and Arizona. (Brahmbhatt Decl. ¶ 5.) Around August 2009, VITI also began distributing its product in shrink-wrapped six-packs through Albertson's grocery stores. (Brahmbhatt Decl. ¶ 6.)

FIJI learned of the allegedly infringing VITI product in April 2009, (Krzycki Decl. ¶¶ 6–7), and sent VITI a cease and desist letter on April 27, 2009. (Criona Decl. ¶ 4, Ex. B, Feb. 8, 2010.) After an exchange of letters and telephone calls between FIJI's former attorney Andrew Asch, and David A. Berstein, counsel on behalf of Defendant Fiji Mineral Water USA, LLC, during which FIJI alleges that it did not receive responses as promised by Mr. Berstein, (Criona Decl. ¶¶ 5–10, Feb. 8, 2010), FIJI learned that VITI was preparing for the packaging and production of 50,000 cases of six-pack shrink-wrapped VITI brand water to be distributed for sale in California. (Criona Decl. ¶ 11, Feb. 8, 2010; Krzycki Decl. ¶ 10.) FIJI filed the original complaint in this matter on October 6, 2009, and amended the complaint on November 6, 2009 and again on April 27, 2010. FIJI initially filed for a preliminary injunction on February 8, 2010, which was continued until September 20, 2010.

FIJI alleges that the VITI bottled product infringes eleven of its federally registered trademarks. (Pls.' Am. Compl. ¶ 26, Nov. 6, 2009.) FIJI also alleges that the VITI product infringes the FIJI trade dress, which includes the following elements: the use of a bottle with a dominantly square shape, with a recessed central body portion defined by the protruding shoulders and base portions of the bottle, a blue bottle cap, a transparent outer front label with a pink accent in the lower right hand corner, a depiction of a blue background and palm tree fronds on the inside of the back label, a three-dimensional effect created by having a transparent label on the front panel of the bottle revealing the inner side of the back label, a rainwater drop on the front label, a statement on the front label stating "From the islands of Fiji/Natural Artesian Water," and prominent use of the four-letter, two-syllable word FIJI, in block white lettering with a metallic outline around the letters. (Pls.' Am. Compl. ¶ 24, Cochran Decl. ¶ 20.)

## II. ANALYSIS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009). FIJI has met its burden on all four of these requirements.

### A. Likelihood of Success on the Merits

A party seeking a preliminary injunction must make a "clear showing" of likelihood of success on the merits of its claim. *See Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997); 5 McCarthy on Trademarks § 30:35 (4th ed.2010). To succeed in a trade dress infringement claim here, FIJI must show (1) that it owns a protectable trade dress that is not functional, (2) that the trade dress is either inherently distinctive or has acquired distinctiveness through secondary meaning, and (3) that VITI's trade dress creates a likelihood of confusion as to the source, affiliation, connection to or sponsorship of the product. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir.1998). FIJI has made such a showing.

### 1. Protectable Trade Dress

A protectable trade dress is a list of discrete elements that make up the "total image of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.1993); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir.1989). Trade dress protection is broader in scope than trademark protection because it "protects aspects of packaging and product design that cannot be registered for trademark protection" and because it "requires the court to focus on the entire selling image." *Vision Sports, Inc.*, 888 F.2d at 613; *see also Clicks Billiards v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir.2001) ("[W]e focus not on the individual elements, but rather the overall visual impression that the combination and arrangement of those elements create.").

A protectable trade dress must be non-functional. *Disc Golf Ass'n, Inc.*, 158 F.3d at 1006. Functional features of a product are those which are "essential to the use or purpose of the article or … affect the cost or quality of the article, that is, if exclusive use of the feature[s] would put competitors at a significant non-reputation related disadvantage." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001) (*quoting Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995)). To determine whether a product's trade dress is functional, the Court may "collectively" weigh four factors, none of which is dispositive: (1) whether the trade dress yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture. *Disc Golf Ass'n, Inc.*, 158 F.3d at 1006. The "inquiry is not directed at whether the individual elements are functional but whether the whole collection of elements taken together are functional." *Int'l Jensen*, 4 F.3d at 823. Thus even if this Court assumes that VITI can establish with admissible evidence that the square bottle shape of the FIJI bottle is primarily functional, because it wastes less space in packaging so more cases of water can fit

into a shipping container,[2] VITI's claim does not defeat Fiji's showing of non-functionality because it focuses on a single element, rather than "the overall visual impression" of the trade dress as a whole. "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress *as a whole* is functional...." *Clicks Billiards, Inc.,* 251 F.3d at 1259.

Federal courts in this circuit analyzing the first *Disc Golf* factor have found that trade dress features have "utilitarian advantages" when they affect the "cost or quality" of the product or the features are "the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that the particular entity made, sponsored, or endorsed a product." *Leatherman Tool Group v. Cooper Indus., Inc.,* 199 F.3d 1009, 1011–12 (9th Cir.1999). *Compare, e.g., Switchmusic.com, Inc. v. U.S. Music Corp.,* 416 F.Supp.2d 812, 820 (C.D.Cal.2006) (finding that trade dress of Parker line of guitars that included tuning machines, control knobs, humbucking pickups, as well as several aspects of the shape of the body of the guitar had utilitarian advantages because it affected the quality, cost and operation of the guitars); *Atlas Equip. Co. v. Weir Supply Group, Inc.,* No. C07–1258Z, 2009 WL 4670154, at *9 (W.D.Wash. Sept. 15, 2009) (finding that the trapezoidal base, the rounded and raised feet, and the casing design of a slurry pump are functional because they enhance the stability of the pump and prevent the piercing of the pump lining), *with CytoSport, Inc. v. Vital Pharmaceuticals, Inc.,* 617 F.Supp.2d 1051 (E.D.Cal.2009) (*citing Qualitex Co.,* 514 U.S. at 165, 115 S.Ct. 1300) (finding that the combination of the white font, all capital letters MUSCLE MILK, the colored swirl indicating flavor, and the placement of these elements on the sides of the packaging were aesthetic, not functional), *aff'd without opinion in* 348 Fed.Appx. 288 (9th Cir.2009), *Cosmos Jewelry Ltd. v. Po Sun Hon Co.,* 470 F.Supp.2d 1072, 1085 (C.D.Cal.2006) (concluding that use of yellow gold with a sand-blasted matte finish on the petals and high-polished shiny edges gives "a subjectively aesthetic, rather than utilitarian, advantage" with consumers), *aff'd,* Nos. 06–56338, 06–56420, 07–55333, —— Fed.Appx. ——, 2009 WL 766517 (9th Cir. Mar. 24, 2009). Aesthetic elements of a trade dress are only "functional" in limited circumstances where the features "serve an aesthetic purpose wholly independent of any source-identifying function," or in other words, where the consumer is driven to purchase the product based on how it looks. *Au–Tomotive Gold, Inc. v. Volkswagen of America, Inc.,* 457 F.3d 1062, 1072–74 (9th Cir.2006) (finding the use of the Volkswagen and Audi logos on license-plate holders was not "functional" because logos have no function apart from their association with the trademark holder); *Aurora World, Inc. v. Ty Inc.,* 719 F.Supp.2d 1115, 1148–50 (C.D.Cal.2009) (finding that the fanciful coloring and nose and eyes features of plush toys serve an "aesthetic function" because the toys' aesthetic elements drive the consumer to buy the toy or not). For example, the Ninth Circuit found an expired utility patent "weighty evidence" of utilitarian advantages of the parabolic chain design for disc golf "holes," because

---

**2.** VITI asserted at the hearing that the four other companies that bottle water in Fiji and ship it to the United States use square-shaped bottles for this reason. VITI did provide the Court with one such example, the Island Chill water bottle, which it did not properly label as an exhibit, but did not provide any other evidence to support its claim. In addition, VITI relied on a statement from an old website, but did not properly authenticate that website as belonging to FIJI.

the patent documents described how the chain design allowed for greater energy absorption and clearer identification of a completed hole by trapping the disc in the basket. *Disc Golf Ass'n, Inc.,* 158 F.3d at 1007. Similarly, in affirming the cancellation of a trademark of the shape of a bike bottle design with a recessed grip area, the Ninth Circuit found utilitarian advantages because the bottle shape fitted easily into a bicycle bottle holder, the grip area helped the bottle retain its shape for re-use, and the grip area made the bottle easier to grip. *Talking Rain Beverage Co. v. South Beach Beverage Co.,* 349 F.3d 601, 604 (9th Cir.2003). In contrast, aesthetic elements such as the font and size of the lettering on the label, the strategic placement of certain design elements or the use of a particular phrase are not utilitarian advantages. *CytoSport, Inc.,* 617 F.Supp.2d at 1078; *see also K–Swiss, Inc. v. USA AISI-QI Shoes Inc.,* 291 F.Supp.2d 1116, 1123 (C.D.Cal.2003) (concluding that the five stripe design and toe box design of athletic shoes is aesthetic not functional).

 In this case, FIJI's claimed trade dress is primarily based on aesthetic elements: the three-dimensional effect of the transparent label, the use of tropical foliage on the inside back label, the placement of the pink accent in the lower right corner of the front label, the use of a stylized raindrop, and the white block letters and placement of the word FIJI and the phrases "From the islands of FIJI/NATURAL ARTESIAN WATER" in the upper third of the front label. (Cochran Decl. ¶ 20.) None of these elements affect the "actual benefit" that the consumer wishes to purchase. Consumers do not buy bottled water based on how its packaging looks, but rather based on how the water tastes or how much it costs. Instead, the combination of aesthetic elements identifies the bottle as the FIJI brand. FIJI's President and COO John Cochran declared that each element of the

FIJI trade dress was designed to create a unique-looking product. (Cochran Decl. ¶ 28.) FIJI has won awards for its innovative packaging. (Cochran Decl. ¶ 29.) Although FIJI does include the square bottle shape as an element of its trade dress, FIJI seeks to protect the shape of the bottle together with the aesthetic elements such as the font, the raindrop and the hibiscus flower. Taken together, the design elements of FIJI's water bottle are purely aesthetic.

FIJI has also provided substantial evidence that "commercially feasible alternative configurations exist" such that "providing trademark protection to one design would not hinder competition." *Disc Golf Ass'n,* 158 F.3d at 1008. FIJI submitted the 2008 Bottled Water Guide published by BevNet.com, which demonstrates wide variation in the shapes, sizes, color and labeling schemes used by other brands. (Gallo Decl. Ex. D, Aug. 2, 2010.) Several other brands do use square-shaped bottles, such as Bella Voda Inc.'s BellaVoda Artesian Water, Real Water, and Icelandic Glacial, many brands use blue caps, such as Nestle Water N.A.'s Ice Mountain Water and Arrowhead Water, and several brands use tropical foliage elements, such as Hawaiian Springs Natural Artesian Water (Gallo Decl. Ex. D at 190, 191, 202, 204, 211), but none combine all of these elements together with the font and three-dimensional effect identified in FIJI's trade dress like the VITI bottle. Since competitors routinely use alternative designs in packaging their bottled water products, protecting the particular combination of elements of the FIJI packaging will not hinder competition in the bottled water industry. *See K–Swiss, Inc.,* 291 F.Supp.2d at 1122 n. 1 ("[M]erely because one competitor uses a disputed feature, does not necessarily mean that the feature's function is so essential that competi-

tors will be disadvantaged if precluded from using it.").

FIJI has also provided evidence that its trade dress is not the result of a simple or inexpensive method of manufacturing. Mr. Cochran stated that FIJI's bottle and label design is relatively expensive compared to alternative designs, "because the bottle lacks reinforcing ribbing and thus requires the use of more plastic than other designs" and "the three-dimensional labels require more specialized labeling equipment and take more time to apply to the bottle than other labeling techniques." (Cochran Decl. ¶ 24.) FIJI manufactures its bottles on-site in Fiji, even though it is more expensive, to assure the highest quality standards. (Cochran Decl. ¶¶ 17, 18.) Moreover, Mr. Cochran stated that each of the design elements was selected to be "innovative" and "unique." (Cochran Decl. ¶¶ 19, 28.) *See Clicks Billiards, Inc.,* 251 F.3d at 1262 ("That design decisions were made for aesthetic reasons—and not, for example, because they were the only, the cheapest, or the most efficient way to design a pool hall—is evidence of non-functionality.").

The final factor in the *Disc Golf* analysis is whether a seller "advertises the utilitarian advantages of a particular feature." *Disc Golf Ass'n,* 158 F.3d at 1009. FIJI maintains that it does not tout any utilitarian aspects of its design in its advertising. (Cochran Decl. ¶ 23.) Most of the FIJI advertisements and other articles about FIJI feature the water's pristine purity, its high silica content, and the quality assurance that comes from bottling the water at its source. There are several periodical articles that list FIJI among high-end or "status" bottled water products and include endorsements from celebrities. There are also several periodical articles describing how the company was founded by David Gilmour in connection with an exclusive resort that Gilmour operated in Fiji, and describing the company's charitable works supported by some of the profits from selling the water. (Def.'s Reply to Opp'n Mot. to Bifurcate Ex. E.)

VITI alleges that FIJI did advertise the utilitarian advantages of the square bottle shape, relying on a 2001 Newsweek article that interviewed the founder and former CEO of FIJI and reported that the FIJI square bottle shape was designed to save shipping costs as well as look cool.[3] (Def.'s Reply to Opp'n Mot. to Bifurcate Ex. E.) Admittedly, the one article touts the utilitarian advantages of FIJI's square bottle shape, but the same Exhibit of which that article is a part also includes many more magazine and newspaper articles as well as advertisements about Fiji water that make no mention of the shipping advantages of the square bottle shape. Unlike in *Talking Rain,* where the product slogan, "Get a Grip!" touted the bottle's utilitarian feature, 349 F.3d at 604, in this case the extent of any such advertising is relatively minimal when considering all of FIJI's advertising. *See Big Island Candies, Inc. v. Cookie Corner,* 244 F.Supp.2d 1086, 1092 (D.Haw.2003) (considering the articles submitted by the defendant as evidence of "touting" by the plaintiff and finding that one article about the utilitarian advantage was enough to create a genu-

---

**3.** The Court considers the newspaper article offered by VITI because statements attributable to the FIJI CEO are non-hearsay admissions, and the statements in the article are offered as evidence of "touting," not for the truth of the matter asserted. VITI also attempts to rely on the deposition transcript of John Cochran, the current President and COO of Fiji Water Company, in which VITI counsel read Mr. Cochran a statement about the shipping advantages of the square bottle shape, purportedly found on the 2002 version of the Fiji Water Company website, and Mr. Cochran acknowledged that such a statement might have been made in the past. (Cochran Dep. 81:7–82:7, May 13, 2010.)

ine issue of material fact). The overwhelming majority of FIJI's advertising does not tout the square bottle shape and instead focuses on the water's purity and its high silica content.

Simply stated, all four *Disc Golf* weigh in favor of a finding that FIJI's bottle and label trade dress is non-functional.

### 2. Trade Dress Is Inherently Distinctive and Has Acquired Secondary Meaning

 The second element that FIJI must establish to succeed on the merits for its trade dress infringement claim is that its trade dress is inherently distinctive or has acquired secondary meaning. Packaging such as the FIJI bottle shape and label design is inherently distinctive if "[its] intrinsic nature serves to identify a particular source." *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *see also* 1 McCarthy on Trademarks § 8:12.50 (4th ed. 2010) (bottle is packaging). To determine whether packaging is so "unique, unusual, or unexpected in this market that one can assume without proof that it will automatically be perceived by consumers as an indicator of origin," the court may look to (1) whether the design is a common, basic shape or design, (2) whether it was unique or unusual in a particular field, (3) whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or (4) whether it was capable of creating a commercial impression distinct from the accompanying words. *Seabrook Foods, Inc. v. Bar–Well Foods Ltd.*, 568 F.2d 1342 (CPPA 1977). *See Wal–Mart Stores, Inc.*, 529 U.S. at 210, 120 S.Ct. 1339 (noting that the *Abercrombie* spectrum of distinctiveness is properly applied to *word* marks); *see also* 1 McCarthy on Trademarks § 8:13 (4th ed. 2010) (commenting

that *Seabrook* test is preferred for classifying inherently distinctive trade dress in packaging and containers); *DCNL, Inc. v. Almar Sales Co.*, 47 U.S.P.Q.2d 1406, 1997 WL 913941 (N.D.Cal.1997), *aff'd without opinion*, 178 F.3d 1308 (9th Cir.1998).

 Although the square bottle and blue cap elements may be fairly common in the bottled water industry, the stylized hibiscus, the palm fronds and the three-dimensional effect of the transparent front label with palm fronds on the inside back label are not a common design. *Contra Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577 (2d Cir.1993) (giving examples of designs that are not inherently distinctive in certain markets, such as packaging lime soda in green cans or showing a shining car on a bottle of car wax). The stylized white block letters with metallic outline for the word "FIJI," together with the tropical foliage using hues of blue and green and the raindrop invites consumers to imagine fresh, clear water from a remote tropical island. Reviewing the 2008 Bottled Water Guide that FIJI submitted reveals no other brands that combine the elements of the square bottle, three-dimensional labeling effect, and tropical motif. (Gallo Decl. Ex. D.) FIJI has won international awards for print and packaging excellence and design innovation in the food packaging industry, which is strong evidence that its packaging is unique or unusual in the field and not simply a variation on existing bottled water designs. (Cochran Decl. ¶ 29.) Finally, the transparent three-dimensional label distinguishes FIJI from the other brands, and makes the trade dress recognizable even apart from the block-letter word mark FIJI, as evidenced by some of the open-ended responses consumers gave in FIJI's consumer confusion survey. (Poret Decl. Ex. A 25–26, Mar. 29, 2010.) Based

on this evidence, the Court concludes that FIJI's trade dress is inherently distinctive.

FIJI has also provided substantial evidence that its trade dress has acquired distinctiveness through "secondary meaning." A trade dress has secondary meaning when "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). Secondary meaning can be established by direct consumer testimony or survey evidence that actual purchasers associate the design with the source, the length and manner of advertising, the amount of sales and number of customers, the length, manner and exclusive use of the particular trade dress, and proof of intentional copying of the trade dress by the defendant. *Vision Sports,* 888 F.2d at 615; *see also Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1151 (9th Cir.1999). Mr. Cochran stated in his declaration that since 1997, FIJI has spent more than $65 million on advertising in the United States to develop its brand, including $17.6 million in 2008 alone. (Cochran Decl. ¶¶ 44–45.) In addition to advertising and direct marketing efforts to grocery stores, restaurants, hotels, night clubs, and health clubs, FIJI brand water has appeared in around 30 popular TV shows and nearly 20 major motion pictures, (Cochran Decl. ¶¶ 41–42), and FIJI has sponsored numerous high profile charity events, (Cochran Decl. ¶¶ 35–37). Most significantly, FIJI has sold nearly 65 million cases of water, or 1.1 billion bottles of water, since 1997, over 90 percent of which were sold in the United States. (Cochran Decl. ¶ 46.) FIJI water has been sold and distributed in connection with the FIJI trade dress in the United States since 1997, and FIJI has been vigilant in protecting its marks against potential infringers. (Cochran Decl. ¶¶ 31, 32.) *See also Dayals (Fiji) Artesian Waters Ltd. v. Fiji Water Co.,* No. CV 07–03649 (C.D. Cal. June 25, 2008) (judgment). Finally, there is circumstantial evidence that VITI intentionally copied the FIJI trade dress. In September 2007, VITI sold a bottled water product in Fiji and Papua New Guinea called "VitiBlu" that was a round bottle with a blue cap, used an italic font, and depicted a beach scene on the front label—in short, it did not resemble any of the FIJI trade dress elements. (Criona Decl. ¶¶ 13–18, Ex. E.) In April 2009, when VITI began marketing its water in the United States, its product was a square bottle, with the name VITI in white block letters outlined in blue with a raindrop and the phrase "From the Mountains of Fiji Islands/VITI/Natural Artesian Mineral Water" on a transparent front label, and a bird of paradise with large green leaves on the inside of the back label. The obvious similarity between the new VITI bottle and the FIJI trade dress supports an inference of deliberate copying. *See K–Swiss, Inc.,* 291 F.Supp.2d at 1124 (C.D.Cal.2003).

In sum, FIJI has shown both that its packaging design is inherently distinctive and that its packaging has acquired secondary meaning.

### 3. Likelihood of Confusion of FIJI Trade Dress and VITI Bottle

In order to succeed on the merits for its trade dress infringement claim, FIJI must also show that the VITI bottle design will probably cause consumer confusion as to the source or sponsorship of the product—in other words, that consumers will think that VITI is produced by or affiliated with FIJI. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215 (9th Cir.1987) ("Likelihood of confusion requires that confusion be probable, not simply a possibility."). The Ninth Circuit has

identified eight factors ("the *Sleekcraft* factors") to help guide the analysis to determine whether such confusion is likely: (1) the similarity of the mark(s) or trade dress, (2) the strength of the mark(s) or trade dress, (3) evidence of actual confusion, (4) the proximity or relatedness of the goods, (5) the degree to which the marketing channels used for the goods converge, (6) the type of goods and the degree of care likely to be exercised by the purchasers, (7) the defendant's intent in selecting the mark or trade dress, and (8) the likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979), *abrogated in part on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792 (9th Cir.2003). The test is a pliant one—some factors are more important than others, and the factors need not be mechanically added up in order to find a likelihood of confusion. *Dreamwerks Production Group, Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998).

### (a) Similarity of the Trade Dress

■ The similarity of the trade dress "has always been considered a critical question in the likelihood of confusion analysis." *Brookfield Comm., Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1054 (9th Cir. 1999). "Obviously, the greater the similarity between the two [trade dresses] at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1206 (9th Cir.2000). To assess similarity, courts should consider the two trade dresses in their entirety and as they appear in the marketplace, judge similarity in terms of appearance, sound, and meaning, and weigh similarities more heavily than differences. *Id.* The analysis of the appearance of combined elements of the FIJI trade dress is of critical importance, because consumers of bottled water will see the bottle and label as a whole on the shelf in the grocery store, rather than the individual registered marks.

■ A visual inspection of the FIJI and VITI bottles reveals numerous similarities in the bottle shape, the inside back label, and the front label designs. First, both bottles are transparent, with square-shaped bodies with rounded, slightly protruding "shoulders" at the top and bottom of the body of the bottle, and rounded, pyramidal top portions above the shoulders. Both bottles have blue caps. Second, both bottles have an inside back label that is visible through the transparent front label, which depicts green tropical foliage against a blue background, and which creates a three-dimensional scene with the front label when the bottle is viewed from the front. Third, both products' front labels are transparent, with the name of the product displayed prominently in large white, all-caps block letters in the upper third of the label. Both product names are outlined with a contrasting dark color. The VITI product uses the phrase "From the mountains of Fiji Islands" above the name VITI, and the phrase "Natural Artesian Mineral Water" below the name VITI, while the FIJI product uses the phrase "From the islands of" above the name FIJI, and the phrase "Natural Artesian Water" below the name FIJI. Both labels include a stylized raindrop, and both labels have a bright pink element in the lower right-hand corner. Although the names "VITI" and "FIJI" might not sound the same, they are both four letter, two-syllable words with both syllables ending in "i," and the two names do have similar meaning, as Viti Levu is the Fijian name for the largest island in Fiji, where both products are made. (Pls.' Second Am. Mem. P. & A. Supp. Mot. for Prelim. Inj. 15, June 3, 2010.) Taking all of the elements of the trade dress togeth-

er, the overall similarity between the two bottles is remarkable.

### (b) Strength of the Trade Dress

A strong, "inherently distinctive" trade dress is entitled to the most protection, because it is more likely that consumers will be confused by another's use of a similar trade dress. *See Sleekcraft,* 599 F.2d at 348. FIJI has designed a unique combination of tropical plants, a three-dimensional label, and the prominently featured white block letters "FIJI," which sets its product apart from existing bottled water designs. Its distinctive trade dress has been further strengthened since 1997 by extensive advertising, event sponsorship, and product placement in popular television shows and movies. *See Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1449 (9th Cir. 1988). FIJI's consumer confusion survey provides substantial evidence that actual consumers do know and recognize the FIJI brand, based at least in part on its trade dress. (Poret Decl. Ex. A 25–26, Mar. 29, 2010.) Moreover, consumers appear to be willing to pay a premium for the FIJI brand, which costs around $.40 per one-liter bottle more than VITI. (Brahmbhatt Decl. ¶ 17.) It is simply not credible to contest the fact that FIJI's trade dress is relatively strong.

### (c) Evidence of Actual Confusion

Evidence of actual consumer confusion is "persuasive proof that future confusion is likely." *Sleekcraft,* 599 F.2d at 352. FIJI showed that consumers are confused by the two water bottles. FIJI submitted a blinded, controlled Eveready consumer confusion survey of more than 400 respondents at a sample of malls nationwide, which reported a 24.3% confusion level after adjusting for the confusion found in the control group. (Poret Decl. Ex. A 12, Mar. 29, 2010.) In other words, 24.3% of respondents answered that the VITI water

bottle shown to them was made by FIJI or the same company that makes FIJI water, or was put out with the sponsorship or approval of FIJI. (Poret Decl. Ex. A 24, Mar. 29, 2010.) Many of these respondents' reasons for thinking the product was associated with FIJI were the elements of the FIJI trade dress, such as "It's square"; "The style of the bottle. Just the design or font of the words is all."; "Fiji water-because of the bottle and sticker inside"; "The whole design is the same, but it says VITI instead of FIJI, which still sounds a lot alike." (Poret Decl. Ex. A 25–26, Mar. 29, 2010.) A confusion level of 24.3% approximates the 25% to 50% that is generally viewed as "solid support" for finding likelihood of confusion, and where there is other evidence weighing in favor of a likelihood of confusion, courts have held that findings of 15% to 20% confusion corroborate that likelihood. 6 McCarthy On Trademarks § 32:188 (4th ed. 2010).

VITI's own expert survey, conducted by Dr. Kevin Gentry, does not discredit FIJI's survey. Dr. Gentry reported an 8% confusion level in an online survey of 401 participants nationwide. (Gentry Decl. ¶¶ 11–14.) Dr. Gentry's report did not describe how he calculated the 8%. (Gentry Decl. Ex. A 10.) However, FIJI submitted a rebuttal report from its expert that did explain how Dr. Gentry arrived at his 8% finding. (Poret Rebuttal Decl. Ex. A 8–9.) The Court was troubled by several aspects of Dr. Gentry's survey, all of which indicate that his report under-stated the confusion level. Indeed, FIJI's expert Dr. Hal Poret found that after adjusting for some of these aspects, Dr. Gentry's survey would support finding at minimum a 17.5% confusion level, and perhaps as high as a 28% confusion level. (Poret Rebuttal Decl. ¶¶ 7–9.) First, Dr. Gentry did not include as "confused" 10 respondents that misspelled FIJI as FIGI or FUJI or FUGI,

which would increase the confusion level by 2.5%. (Poret Rebuttal Decl. Ex. A 10.) Second, Dr. Gentry did not include as "confused" the 15 respondents who answered the question "What brand name, or names, if any, do you think are also used by the company that makes [VITI]?" with "Fiji" (or misspelled it), which would increase the confusion level by 4%. (Poret Rebuttal Decl. Ex. A 10.) Third, Dr. Gentry did not count as confused any of the 53 respondents who answered "Fiji" when asked "Where do you think this product comes from?" (Poret Rebuttal Decl. Ex. A 12.) Admittedly, this is an ambiguous question, because many respondents probably answered on the basis of geographic origin, not brand name, but at least some of the subsequent answers given by these respondents do suggest that the respondent meant the brand, such as "Looks like the Fiji bottle." (Poret Rebuttal Decl. Ex. A 15.) Finally, Dr. Gentry's survey began with a question that listed numerous brands of water, including separately listing FIJI and VITI, which suggests to respondents at the outset that the two brands are not affiliated with each other, (Poret Decl. Ex. A 21), and Dr. Gentry did not adjust for invalid survey responses, (Poret Decl. Ex. A 17), both of which may have artificially deflated the confusion level findings.

**(d) Proximity or Relatedness of the Goods**

Goods are proximate if they are "similar in use and function" and "would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft,* 599 F.2d at 348, 350. Both VITI and FIJI produce and market "natural artesian [mineral] water" that is bottled at the source in the islands of Fiji. The fact that VITI alleges it is "100% mineral water" not "artesian water" (Defs.' Mem. P. & A. Supp. Opp'n 25) does not provide any basis for finding that the

two bottled waters have different "uses or functions." It is undeniable that the products have the same uses and functions.

**(e) Degree to Which Parties' Marketing Channels Converge**

The Court must next consider "whether the predominant purchasers of the parties' goods are similar or different, and whether the parties' marketing approaches resemble one another." *Aurora World, Inc.,* 719 F.Supp.2d at 1162 (citing *Gray v. Meijer, Inc.,* 295 F.3d 641 (6th Cir.2002)). The greater the degree of overlap, the more likely there is to be confusion. *Sleekcraft,* 599 F.2d at 353. Here, VITI and FIJI are in direct competition. Both parties have submitted evidence that they directly market their bottled water to grocery stores and retailers, (Cochran Decl. ¶ 35; Brahmbhatt Decl. ¶ 5), and both parties submitted evidence that their product has been sold side by side in the same stores such as Albertsons and Arco's AM/PM convenience stores. (Krzycki Decl. ¶¶ 13–14, 16–18, Ex. A, B; Brahmbhatt Decl. ¶¶ 13–14.)

**(f) Type of Goods and Degree of Care Likely to be Exercised by the Purchaser**

Likelihood of confusion is determined on the basis of a "reasonably prudent consumer," so courts have expected consumers "to be more discerning—and less easily confused—when [they are] purchasing expensive items." *Brookfield Comm., Inc.,* 174 F.3d at 1060. "On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Id.* Even premium bottled water is a low-cost consumer good, purchased at a grocery store or a convenience store for less than $3.00, so customers are more likely to be confused by the similar trade dress. *See CytoSport, Inc.,* 617 F.Supp.2d at 1076–77

(RTD protein supplement); *CSC Brands LP v. Herdez Corp.*, 191 F.Supp.2d 1145, 1151 (E.D.Cal.2001) (fruit and vegetable juice). Evidence that FIJI brand water consumers recognize the FIJI brand and are willing to pay a premium for that brand does not negate the possibility that consumers assume that VITI is affiliated with FIJI or is a lower-cost FIJI product based on the similarity of the packaging. Unlike a consumer buying a Gucci watch, a "reasonably prudent" consumer would not carefully inspect the back label of a bottle of water to ascertain who produced it.

### (g) Defendant's Intent in Selecting the Mark

Knowing adoption of a mark that is closely similar to one that is used by another is a basis for inferring intent to deceive the public, which is "strong evidence of a likelihood of confusion." *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir.1993). Here, the obvious similarity between the two bottles permits an inference of intent. *See K-Swiss, Inc.*, 291 F.Supp.2d at 1124. Both bottles use a square bottle shape, blue cap, transparent front label, tropical foliage on the inside of the back label, white block letter all-caps font outlined in a darker color, and the phrase "Natural Artesian [Mineral] Water" and "From the [Mountains of] the islands of Fiji." In light of how well-known the FIJI packaging was by 2007 and the wide variety of alternative designs used in the bottled water industry, it seems unlikely that such similarity could result from a coincidence. The inference of intentional copying is bolstered by circumstantial evidence that VITI changed its

packaging before it began to distribute its product in the United States. *See Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 637 (9th Cir.2007) (affirming district court's decision not to rely on defendant's intent in the *Sleekcraft* analysis because "[t]his is not a case where a would-be competitor adopts a mark virtually identical to that of a well-known mark. . . ."). In September 2007, VITI produced and distributed a bottled water product called Vitiblu, which was a round bottle with italic font and a non-transparent front label depicting a tropical beach scene.[4] VITI argues that the Vitiblu bottle does not support this inference because that bottle was designed only for a special distribution in Papua New Guinea. (Def.'s Mem. P. & A. Supp. Opp'n 24.) However, VITI cannot point to any evidence to support this allegation—neither the Brahmbhatt Declaration nor the VITI website that VITI cited in its Opposition papers make any reference to a limited special distribution. The back label of the old "Vitiblu" bottle lists redemption values for 3 states in the United States and the phone number 1–888–FIJIUSA, which suggests that the product was at least intended for distribution in the United States. (Gallo Decl. Ex. C.) Finally, in response to a direct question from the Court at the hearing for the preliminary injunction, VITI could not point to any admissible evidence in the record that VITI did not intend to copy the FIJI trade dress. VITI counsel referred the Court to the Declaration of Mr. Brahmbhatt, who works for VITI's distributor Global H20, which does not include any statements re-

---

4. VITI improperly objected to Ms. Criona's declaration in its Memorandum of Points and Authorities in Support of its Opposition to the Preliminary Injunction on the ground that she lacked personal knowledge. This objection is overruled. Ms. Criona's declaration was based on her personal observation of the two

bottles, both of which list the same website on their back label, which was registered by defendant FMW in October 2007, and based on information contained in FIJI's ordinary business records maintained in the regular course of business. (Criona Decl. ¶¶ 13–17, Ex. E, F; Gallo Decl. Ex. C.)

lated to VITI's intent in selecting its mark, and to an opinion prepared by the law firm Knobbe Martens regarding possible infringement of the FIJI trademarks, which the Court finds is inadmissible because it is not properly authenticated, as it is unsigned, and it is hearsay not within any exception. VITI, a would-be competitor to FIJI, adopted a bottle and packaging design that is very similar to FIJI's well-known mark and there is evidence VITI previously used a dramatically different design. VITI did not present any credible evidence to negate the inference that it copied many of the features of FIJI's trade dress.

### (h) Likelihood of Expansion of Product Lines

A strong possibility that either party will expand its business to compete with the other weighs in favor of finding infringement. *Sleekcraft*, 599 F.2d at 354. However, where, as here, the parties already compete to a significant degree because they sell related products and use similar marketing channels, this factor is relatively unimportant to the likelihood of confusion analysis. *Brookfield Comm., Inc.*, 174 F.3d at 1055. Neither party has submitted evidence of planned expansion, and FIJI does not allege that VITI's presence is hindering its expansion plans. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir.2005).

In sum, the Court finds that all of the relevant *Sleekcraft* factors demonstrate a likelihood of confusion. In light of this finding and the Court's earlier finding that FIJI has shown that it has a protectable, non-functional trade dress that is inherently distinctive, FIJI has shown that it is likely to succeed on the merits of its trade dress infringement claim against VITI.

### B. Likelihood of Irreparable Harm

To obtain a preliminary injunction, FIJI must also show that it is likely to suffer irreparable harm if one is not issued. Prior to *Winter*, the Ninth Circuit presumed that a plaintiff that had shown a likelihood of success on the merits in trademark infringement cases would also suffer irreparable harm, because allowing the probable infringement to continue would result in loss of control over the company's reputation and goodwill. *Brookfield Comm., Inc.*, 174 F.3d at 1066. Since FIJI is likely to succeed on the merits by demonstrating a likelihood of confusion between its trade dress and the VITI product, FIJI is arguably entitled to that presumption. However, Winter's explicit requirement that a party seeking a preliminary injunction must show that irreparable harm is likely, not merely possible, casts some doubt as to whether that presumption, alone, is sufficient. *Winter*, 129 S.Ct. at 375 (emphasis added); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009) (non-trademark case) ("To the extent our cases have suggested a lesser standard, they are no longer controlling, or even viable."); *CytoSport, Inc.*, 617 F.Supp.2d at 1080–81. *But see Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir.2009) (finding the district court did not abuse its discretion when it presumed irreparable injury in a trademark infringement case). Regardless of whether the presumption applies, FIJI has shown that it is likely to suffer irreparable harm if a preliminary injunction is not issued in this case. FIJI has invested substantial money and effort in developing the reputation and goodwill of its bottled water over the course of more than a decade, including $72 million in advertising and other promotions, resulting in the sale of nearly 1 billion bottles of water in the United States. (Cochran Decl. ¶¶ 32–46.) Allowing VITI to sell its bottled water with a trade dress that is confusingly similar to the FIJI trade dress

jeopardizes FIJI's ability to obtain a reasonable return on this substantial investment. Even more concerning, VITI is interfering with and limiting FIJI's ability to control the reputation of FIJI's recognized brand and the perception of FIJI's premium quality bottled water. *See Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir.1984). If VITI continues to introduce its infringing product into the marketplace, FIJI will undoubtedly have great difficulty maintaining and restoring its reputation and goodwill with the public, many of whom are already confused. *See Rent–A–Center, Inc. v. Canyon Television and Appliance*, 944 F.2d 597, 603 (9th Cir.1991) ("[I]ntangible injuries, such as damage to ... goodwill, qualify as irreparable harm."); 5 McCarthy on Trademarks § 30:47 (4th ed.2010) (" '[I]f an infringer's product is of poor quality, or simply not worth the price, a more lasting, but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.' A likelihood of damage to reputation is by its nature "irreparable.") (internal citations omitted). A preliminary injunction against VITI will protect FIJI from further suffering such irreparable harm.

## C. Balance of Hardships

■ The Court must balance the hardships to FIJI and VITI when deciding whether to issue a preliminary injunction. The balance of hardships in this case tips in favor of granting the preliminary injunction. FIJI has shown that it has made substantial investments in establishing its reputation and good will, and that its investments have been successful insofar as FIJI has sold nearly 1 billion bottles of water in the United States since 1997. (Cochran Decl. ¶¶ 42–46.) FIJI has also shown there is significant actual consumer confusion, (Poret Decl. Ex. A), so FIJI has lost control over its reputation and good will. Allowing the sale of VITI products which are likely to be found to infringe on the FIJI trade dress would impose a significant hardship on FIJI. VITI, in contrast, has only been in the United States market for a little more than a year, and only has contracts with a few retailers. (Brahmbhatt Decl. ¶¶ 5, 18–19.) This suggests that VITI has not yet established a strong market presence in the United States, so the interference with VITI's relationship with its clients and customers caused by the injunction would be relatively small. VITI can also repackage its bottled water, which it has done at least once before when it produced Vitiblu, and can resume selling water in the United States using a non-infringing trade dress. VITI nevertheless argues that a preliminary injunction will impose hardship because it could force VITI to cease selling water in the United States. (Def.'s Mem. P. & A. Supp. Supplemental Opp'n 5.) The Court is not convinced that a preliminary injunction will put VITI out of business, but, in any event, "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 924 F.Supp. 1559, 1574 (S.D.Cal.1996), (quoting *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir.1988)), *aff'd*, 109 F.3d 1394 (9th Cir. 1997).

## D. Public Interest

■ The public interest favors a preliminary injunction where, as here, the plaintiff has shown a likelihood of confusion. The public is entitled to a clear understanding of the source of a product and to distinguish goods among competitors. *Inwood Labs., Inc.*, 456 U.S. at 854 n. 14, 102 S.Ct. 2182 (citing legislative history of the Lanham Act); "The likelihood of confusion is [a] critical factor" in

assessing the public interest. *See* 5 McCarthy on Trademarks § 30:52 (4th ed. 2010). Where there is a likelihood of confusion or infringement, the Ninth Circuit has rejected a defendant's argument that the competition that results from the availability of its products is in the consumers' interest because it lowers prices. *See Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,* 603 F.3d 1133, 1138 (9th Cir.2010) ("But trademark law protects trademark holders from the competition that results from trademark infringement, irrespective of its effect on prices.") *But see Int'l Jensen,* 4 F.3d at 827 (accepting the district court's finding of no public interest in granting injunction where there was no likelihood of confusion because the injunction would deprive consumers of a choice of products). That competition argument is similarly inapplicable here. The bottled water industry remains highly competitive and consumers have myriad products to choose from, as evidenced by the wide range of water bottle shapes and labeling designs that are currently being marketed. Protecting FIJI's investment in its own trade dress against probable infringers promotes competition by encouraging companies to develop their own brands so that consumers can distinguish between them. Any benefit to consumers from having the VITI water bottle in the market is far outweighed by the harm to consumers of buying VITI in the mistaken belief the bottled water is associated with FIJI.

## CONCLUSION

For the foregoing reasons, FIJI's motion for a preliminary injunction is GRANTED. The Court will enter a preliminary injunction ordering VITI to cease using FIJI's trade dress, or the substantial equivalent thereof, in connection with bottled water sold in the United States, including the current VITI bottle. The preliminary injunction shall be effective upon the posting by FIJI of an undertaking or bond in the amount of $20,000.